# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:21-CV-00617-ALM Judge Mazzant |
| ARMADILLO DISTRIBUTION ENTERPRISES, INC., | § § § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant Armadillo Distribution Enterprises, Inc.'s Motion for Partial Summary Judgment (Dkt. #36) and Plaintiff Allied Property and Casualty Insurance Company's Motion for Summary Judgment (Dkt. #37). Having considered the motions, responses, and applicable law, the Court finds that Defendant's motion should be **GRANTED**, and Plaintiff's motion should be **DENIED**.

## BACKGROUND

### I.   *Gibson v. Armadillo*

On October 20, 2017, Gibson Brands Inc. ("Gibson") sent a cease-and-desist letter to Armadillo Distribution Enterprises, Inc. ("Armadillo") (Case No. 4:19-CV-358, Dkt. #1, Exhibit G). The letter stated that Gibson owned exclusive trademark rights related to certain guitar design shapes. Specifically, Gibson referenced its Flying V Body Shape Design and the Explorer Body Shape Design trademarks, and requested Armadillo immediately cease using these Gibson trademarks in any advertising, sales, and any other related services. On May 13, 2019, Gibson sent another cease-and-desist letter to Armadillo, threatening to file suit if Armadillo did not cease the

alleged infringing actions (Case No. 4:19-CV-358, Dkt. #1, Exhibit H).

On May 14, 2019, Gibson filed its original complaint against Armadillo for trademark infringement (the "*Gibson* action").[1] Gibson alleged Armadillo wrongfully advertised, offered for sale, sold, and distributed products that infringed on the following Gibson trademarks: the Flying V Body Shape Design, the Explorer Body Shape Design, the ES Body Shape Design, the HUMMINGBIRD trademark, and the MODERNE trademark (Case No. 4:19-CV-358, Dkt. #1 ¶ 1). Gibson requested monetary damages and a permanent injunction that Armadillo be barred from offering Armadillo's DEAN V guitar, DEAN Z guitar, DEAN Gran Sport guitar, LUNA Athena 501 guitar, DEAN Avo Headstock, and LUNA Fauna Hummingbird products.

On June 6, 2019, Gibson filed its first amended complaint (Case No. 4:19-CV-358, Dkt. #7). In addition to the five trademarks alleged in the original complaint, the first amended complaint added new infringement claims related to Gibson's SG Body Shape Design and Dove Wing Headstock Design trademarks. While Gibson had provided Armadillo actual notice of the claims alleged in the original complaint through the cease-and-desist letters, Gibson noted that it "did not provide Armadillo with actual notice of the infringement of Gibson's SG Body Shape Design Trademark or Gibson's Flying V Trademark as the infringement was determined after the original [c]omplaint was filed on May 14, 2019" (Case No. 4:19-CV-358, Dkt. #7 at p. 7 n.1). On July 8, 2019, Armadillo filed its answer denying all of Gibson's claims. Additionally, Armadillo raised the affirmative defense of laches, asserting that all of Gibson's claims and requested relief were barred in their entirety due to Gibson's excessive and inexcusable delay, which caused Armadillo substantial economic and evidentiary prejudice (Case No. 4:19-CV-358, Dkt. #12). Armadillo also brought counterclaims for cancellation and tortious interference with Armadillo's

---

[1] Gibson also sued and prevailed against Concordia Investment Partners, LLC ("Concordia") for contributory trademark infringement under the Lanham Act. Concordia is not relevant to the present case.

prospective business relations. On November 26, 2019, Gibson filed its second amended complaint (Case No. 4:19-CV-358, Dkt. #74). In addition to the seven trademarks alleged in the first amended complaint, the second amended complaint added a new infringement claim related to Gibson's FLYING V trademark.

The *Gibson* action proceeded to trial on May 16, 2022. The jury returned its verdict on May 27, 2022, finding that Armadillo infringed Gibson's trademarks. In addition to trademark infringement, the jury found that Armadillo sold or marketed counterfeits of certain Gibson trademarks. However, for the Flying V Body Shape Design, the Explorer Body Shape Design, and the Dove Wing Headstock Design, the jury found Gibson inexcusably delayed in asserting its trademark rights, thereby causing undue prejudice to Armadillo. In addition to finding for Armadillo on its laches defense for these three trademarks, the jury found that Armadillo never had unclean hands. The jury awarded Gibson $4,000 in statutory damages for its affirmative finding on the counterfeit claim, but did not find that Gibson suffered actual damage due to Armadillo's infringement. The jury did not find for Armadillo on its remaining counterclaims.

On July 28, 2022, the Court entered final judgment in the *Gibson* action. *See Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-CV-358, 2022 WL 3008501 (E.D. Tex. July 28, 2022). Armadillo was permanently enjoined from the manufacture, advertisement, and/or sale of its LUNA Athena 501 guitar, DEAN Gran Sport guitar, DEAN V guitar, DEAN Z guitar, and guitars bearing, using, or advertising the word "Hummingbird." Armadillo was also ordered to pay Gibson $4,000 in accordance with the jury's verdict on counterfeiting, along with all costs of court spent or incurred in the case.

## II.    *Armadillo v. Allied*

On May 19, 2019—five days after the *Gibson* action was initiated—Armadillo entered into

an insurance agreement with Allied Property and Casualty Insurance Company ("Allied") whereby Allied would defend Armadillo against any lawsuit arising out of a "personal advertising injury" (the "Policy") (Dkt. #1, Exhibit A). On August 4, 2021, Allied filed a complaint for declaratory relief seeking a ruling from this Court that it has no duty to defend Armadillo in the *Gibson* action (Dkt. #1). On October 10, 2021, Armadillo answered and denied Allied's claims (Dkt. #13). Armadillo also asserted counterclaims for breach of contract for failure to provide coverage and failure to cooperate, declaratory judgment on Allied's duty to defend and duty to indemnify, breach of the common law duty of good faith and fair dealing ("bad faith"), negligence, and misappropriation of trade secrets (Dkt. #13 at pp. 8–13).

On April 28, 2022, Armadillo filed a partial motion for summary judgment seeking a ruling on its declaratory judgment and breach of contract claims related to Allied's duty to defend Armadillo in the *Gibson* action under the Policy (Dkt. #36). On the same day, Allied filed a motion for summary judgment on its declaratory judgment claims and on all of Armadillo's counterclaims (Dkt. #37). On May 26, 2022, both Armadillo and Allied filed responses in support of their respective summary judgment motions (Dkt. #44; Dkt. #45). On June 13, 2022, Armadillo filed its reply (Dkt. #48). On June 14, 2022, Allied filed its reply (Dkt. #51). On July 1, 2022, both Allied and Armadillo filed sur-replies (Dkt. #59; Dkt. #60).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The

Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Allied moves for summary judgment on all claims and counterclaims brought by both parties (Dkt. #37). Specifically, Allied argues that it does not have a duty under the Policy to defend Armadillo in the *Gibson* action and is thus entitled to summary judgment on its claim for declaratory relief, Armadillo's claim for declaratory relief, and Armadillo's claim for breach of contract based on denial of coverage. Allied also argues that it is entitled to summary judgment on the remainder of Armadillo's counterclaims. Armadillo disputes each of these arguments, and cross-moves for summary judgment on its claims for declaratory relief and breach of contract based on Allied's duty to defend (Dkt. #36). The Court will address each of these issues in turn.

## I.    Applicable Law

As a preliminary matter, the Court must determine the appropriate substantive law to apply to this dispute. Allied argues the claims should be construed under Florida law, not Texas law, based on Florida's choice-of-law rules related to contract claims and an insurer's duty to defend and indemnify (Dkt. #37 at pp. 7–8). Armadillo first responds that Allied has failed to identify any difference between Texas and Florida law, and second that Allied is not entitled to summary judgment under either forum's law (Dkt. #44 at p. 9 n.9).

This case is presently before the Court on diversity grounds pursuant to 28 U.S.C. § 1332 (Dkt. #1 ¶¶ 2–5).[2] In diversity cases, the Court applies "the law of the forum state to determine which state's law applies." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005); *see also Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-00196, 2021 WL 5907790, at

---

[2] Allied is an Iowa corporation with its principal place of business in Iowa, Armadillo is a Florida corporation with its principal place of business in Florida, and the amount in controversy exceeds $75,000 (Dkt. #1).

*12 (E.D. Tex. Dec. 14, 2021) ("[A] court sitting in diversity applies the forum's choice of law

rules) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). "When there

are no differences between the relevant substantive laws of the respective states, there is no

conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co., L.L.C. v. CFS

La. Midstream Co.*, 428 F.3d 213, 222 (5th Cir. 2005). Therefore, the Court's first step is to

determine whether a true conflict exists between the Texas and Florida law regarding insurer

duties.

The Court first notes that neither party adequately briefed the issue. Pointedly, for example,

Allied urges the Court to apply Florida's choice-of-law rules (Dkt. #37 at pp. 7–8). Yet as stated

above, the law is well-settled that the Court applies the choice-of-law rules of the forum state in

which it sits. *Mumblow*, 401 F.3d at 620. This Court sits in Texas, and thus Texas's choice-of-law

rules control. Moreover, Allied is the party urging this Court to apply foreign law. Thus, Allied

has the burden of convincing this Court that Florida and Texas law differ, and persuading this

Court that Florida law should apply. *See Hughes Wood Prods. v. Wagner*, 18 S.W.3d 202, 204–05

(Tex. 2000) ("[A] movant for summary judgment seeking to have the law of another state applied

must satisfy its burden of proof with respect to the fact questions necessary to the choice of law

decision."). Allied has failed to argue that the substantive laws of the states differ. In fact,

throughout its motion, Allied cites to both Texas and Florida law, admitting on a number of issues

that the two are the same (Dkt. #37 p. 12 n.12, p. 11 n.9 ("The result would be the same under

Texas law.")).

Nonetheless, the Court has reviewed the relevant principles of Texas and Florida law and

finds there is no true conflict between the two. To start, under both Texas and Florida law,

insurance policies are treated as contracts, and thus ordinary contract principles govern the

interpretation and construction of insurance policies. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Wash. Nat'l Ins. Co. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). Accordingly, both forums view the interpretation of an insurance contract as a question of law to be determined by the court. *Schaefer*, 124 S.W.3d at 157; *Ruderman*, 117 So. 3d at 948. In interpreting an insurance policy, both forums construe coverage and any ambiguities liberally in favor of the insured. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *Jones v. Fl. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005).

Further, both forums consider the duties to defend and indemnify to be distinct and separate duties, such that one may exist without the other. *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497–98 (Tex. 2020); *Jones*, 908 So. 2d at 442–43. When it comes to the duty to defend, the duty arises under both Texas and Florida law when the underlying complaint against the insured alleges facts that fairly and potentially bring the suit within coverage of the policy. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 496, 600 (5th Cir. 2006); *Jones*, 908 So. 2d at 442–43. Thus, both forums assess the duty to defend under the eight-corners rule, meaning only the four-corners of the insurance policy and the four-corners of the underlying complaint against the insured are considered. *GuideOne Elite*, 197 S.W.3d at 308; *Jones*, 908 So. 3d at 442–43. Both forums have similar, limited exceptions to the eight-corners rule in this context. *See, e.g.*, *Richards*, 597 S.W.3d at 496 (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 532 (5th Cir. 2004) ("[The] exception allows extrinsic evidence bearing on the duty to defend when (1) 'it is initially impossible to discern whether coverage is potentially implicated' and (2) 'the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'")); *Mt. Hawley Ins. Co. v. Roebuck*, 358 F. Supp. 3d 1351, 1362 (S.D. Fla. 2019) ("Florida courts have found . . . that in special

circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage."); *see also Emps. Mut. Cas. Co. v. New Horizon Prod., LLC*, No. 1:09-CV-958, 2010 WL 11530297, at *2–3 (E.D. Tex. Dec. 15, 2010) (finding no difference because although Texas and Florida word the exceptions differently, both "contemplate the availability of extrinsic evidence in the situation where coverage hinges on resolution of questions that are not at issue in the underlying complaint.") (comparing *Northfield*, 363 F.3d at 531, with *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004)).

Finally, in interpreting whether an exclusion under the insurance policy applies to relieve the insurer from its duty to defend, both forums have identical burden-swapping frameworks. Initially, the insured has the burden of proving the loss is covered under the terms of the policy. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1351 (S.D. Fla. 2015). Once the insured meets its burden, the burden switches to the insurer to prove that the loss arose from a cause that is excepted from the policy. *Gilbert*, 327 S.W.3d at 124; *E.S.Y.*, 139 F. Supp. 3d at 1351. Once the insurer establishes an exclusion's applicability, the burden is then on the insured to prove an exception to the exclusion. *Gilbert*, 327 S.W.3d at 124; *E.S.Y.*, 139 F. Supp. 3d at 1351. However, under the laws of both forums, any ambiguities that arise within this framework, including whether an exclusionary provision applies, are viewed strictly in favor of coverage and in favor of the insured. *Burlington Ins. Co. v. Tex. Krishnas, Inc.*, 143 S.W.3d 226, 232 (Tex. App—Eastland 2004, no pet.); *E.S.Y.*, 139 F. Supp. 3d at 1351.

In sum, the substantive laws of Texas and Florida governing the construction and interpretation of insurance contracts and an insurer's duties to defend and indemnify do not differ

to any real degree. Accordingly, because no true conflict exists between the states' relevant substantive laws, the Court will apply the substantive law of the forum state, Texas, to this dispute. *R.R. Mgmt.*, 428 F.3d at 222; *see also New Horizon Prod.*, 2010 WL 11530297, at *2–3 (applying Texas law after finding no material difference on the law of insurance contracts and insurer duties under Texas and Florida law).

## II.    Duty to Defend

Each party moves for summary judgment on their respective declaratory judgment claims related to Allied's duty to defend Armadillo in the *Gibson* action. Armadillo moves for partial summary judgment on Count One of its declaratory judgment claim and Count One of its breach of contract claim based on the argument that "the *Gibson* litigation contains allegations that at least potentially fall within the coverage of Allied's policy . . . and [Allied] cannot meet its burden to show that any of the exclusionary provisions it has raised eliminate any possibility of coverage" (Dkt. #36 at pp. 1–2). Armadillo thus seeks a declaration that Allied "has a duty to defend and pay Armadillo's defense costs in connection with" the *Gibson* action (Dkt. #36 at p. 1). On the other hand, Allied moves for summary judgment on its declaratory judgment claim by arguing there is no coverage or duty to defend under the Policy because (1) the *Gibson* action does not allege losses during the Policy Period, (2) an exception to coverage in the policy applies, and (3) the known loss doctrine precludes coverage (Dkt. # 37 at pp. 8–14). The Court will address each of these arguments below.

### A.  Extrinsic Evidence

As a preliminary matter, in support of Allied's argument that it does not have a duty to defend, Allied relies on allegations made in Gibson's original complaint as well as pre-suit correspondence between Gibson and Armadillo. Namely, Allied relies on the two cease-and-desist

letters and a settlement letter Gibson sent Armadillo before filing suit that were attached to Gibson's complaint, as well as other pre-suit communications between the parties that were not attached to Gibson's complaint (Dkt. #37 at pp. 2–5). Armadillo argues that under the eight-corners rule, any evidence outside of the underlying pleadings is irrelevant (Dkt. #44 at p. 18). Thus, the Court must determine whether it may properly consider this evidence in ruling on the present motion.

Under Texas law, the Court is to follow the eight-corners rule, which states:

[O]nly two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant . . . Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.

*GuideOne Elite*, 197 S.W.3d at 308. Thus, whether an insurer has a duty to defend its insured is based only on "(1) pleadings against the insured and (2) terms of the insurance policy." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198–99 (Tex. 2022) (citing *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 879 (Tex. 2020)). "Extrinsic evidence or facts outside the pleadings are generally not considered." *Id.* (citing *GuideOne Elite*, 197 S.W.3d at 308); *see also Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) ("Facts outside the pleadings, even those easily ascertained, are not ordinally material to the determination of whether the duty to defend exists, and allegations against the insured are liberally construed in favor of coverage.")).

However, the rule is not without exception. The Texas Supreme Court recently held that "courts may consider extrinsic evidence that the insured and a third party suing the insured colluded to make false representations of fact to secure a defense and create coverage where it

would not otherwise exist." *Monroe*, 640 S.W.3d at 199 (citing *Avalos*, 610 S.W.3d at 879). Additionally, some Texas courts have considered extrinsic evidence when "(1) 'it is initially impossible to discern whether coverage is potentially implicated' and (2) 'the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'" *Richards*, 597 S.W.3d at 500 (citing *Northfield*, 363 F.3d at 532). But to be clear, despite these exceptions, if the extrinsic evidence contradicts a fact alleged in the underlying complaint, the Court may not consider the extrinsic evidence. *Monroe*, 640 S.W.3d at 200; *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) ("In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition.").

Thus, the eight-corners rules serves as the "initial inquiry" the Court must use to determine whether a duty to defend exists. *Monroe*, 640 S.W.3d at 201 (citing *Richards*, 597 S.W.3d at 500). And in the majority of cases, the eight-corners rule—without use of an exception—will resolve coverage determinations. *Id.* But an exception may apply, as the Texas Supreme Court recently explained:

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201–02.

In the present case, Allied urges the Court to consider two types of evidence—(1) pre-suit cease-and-desist and settlement letters attached to Gibson's complaint, and (2) pre-suit correspondence between Gibson and Armadillo not attached to Gibson's complaint (Dkt. #37 at

pp. 2–5). As to the cease-and-desist and settlement letters, Gibson references the letters and the content of the letters within the four-corners of its complaint (Case No. 4:19-CV-358, Dkt. #74 ¶ 36). Thus, even if the letters themselves are extrinsic evidence, the information contained therein is properly before the Court and may be considered by the Court to determine whether Allied has a duty to defend. However, the Court will not consider the other extrinsic evidence Allied cites to for the following reasons. First, Allied has not argued for the application of any of the exceptions discussed above. More importantly, and as discussed fully below, Gibson's complaint and the Policy trigger the duty to defend, and thus the eight-corners rule is determinative of whether coverage exists. Put differently, there is no "gap" in Gibson's complaint that necessitates the use of extrinsic evidence to determine coverage. *Monroe*, 640 S.W.3d at 201–02. Accordingly, except as otherwise stated, Texas law precludes the consideration of the extrinsic evidence Allied relies on in this case. Thus, the Court will not consider extrinsic evidence outside of the Policy and Gibson's complaint.

### B.  Coverage Under the Policy

Under the Policy, Allied is required to "pay those sums . . . that [Armadillo] becomes legally obligated to pay as damages because of a 'personal or advertising injury' to which this insurance applies. [Allied] will have the right and duty to defend [Armadillo] against any 'suit' seeking those damages for which there is coverage under this policy" (Dkt. #1, Exhibit A at p. 21). The Policy goes on to state that coverage "applies to 'personal and advertising injury' caused by an offense arising out of [Armadillo's] business but only if the offense was committed in the 'coverage territory' during the policy period" (Dkt. #1, Exhibit A at p. 21). The parties do not dispute that the alleged injuries here fall within the definition of "personal and advertising injury" under the Policy. Rather, the dispute turns on whether a "personal or advertising injury" was

alleged during the Policy Period.

Under Texas law, an insurer is required to defend any case in which at least *some* of the allegations in the pleadings potentially state a claim covered by the policy. *Graham*, 473 F.3d at 600; *see also Energy Res., LLC v. Petroleum Sols. Intern., LLC*, No. H:08-656, 2011 WL 3648083, at *6 (S.D. Tex. Aug. 17, 2011) (citing *GuideOne*, 197 S.W.2d at 141) (stating the duty to defend under Texas law applies "if *any* allegation in the complaint, if taken to be true, is even *potentially* covered by the terms of the [p]olicy.") (emphasis added). Whether the insurer owes a duty to defend is a question of law for the court to decide. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471–72 (5th Cir. 2009). The duty to defend is defined by the terms of the policy, and the insured bears the initial burden of establishing that a claim against it is potentially within the policy's coverage. *Energy Res.*, 2011 WL 3648083, at *6 (citing *Northfield*, 363 F.3d at 528). "The burden then shifts to the insurer to prove that an exception applies to bar coverage." *Id.* (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 1997)). Even if the complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage. *See id.*; *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 395 (5th Cir. 2001) ("If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit."). Only if *all* allegations contained in the underlying complaint fall outside the scope of the policy does the insurer have no duty to defend its insured. *Pine Oak Builders*, 279 S.W.3d at 655.

Further, in deciding whether an insurer has a duty to defend, the Court must follow the eight-corners rule. *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 490 (Tex. 2008). Thus, whether an insurer has a duty to defend is determined solely from the policy and the allegations in

the underlying complaint against the insured. *See id*. at 495; *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141. The Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally." *Zurich*, 268 S.W.3d at 491; *see also Gehan Homes Ltd. v. Emp'rs Mut. Cas. Co.,* 146 S.W.3d 833, 838 (Tex. App.—Dallas 2004, pet. denied) (stating courts "give the allegations in the petition a liberal interpretation in favor of the insured."); *Lipscomb Ins. Grp. v. Hartford Lloyd's Ins. Co*., No. 3:09-CV-2047, 2010 WL 11475236, at *3, *8 (N.D. Tex. Nov. 29, 2010) (noting "'[a]llegations are read liberally' in favor of coverage and the [c]ourt 'may draw inferences from the petition that may lead to a finding of coverage'" and finding of duty to defend) (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008)); *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F. Supp. 2d 783, 787 (E.D. Tex. 2002) (noting that "[d]oubts as to whether or not the factual allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, . . . will be resolved in the insured's favor" and finding insurer had duty to defend.") (internal citations omitted). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich*, 268 S.W.3d at 491.

Finally, in making its determination, the Court considers only the most recently amended complaint. *See Northfield*, 363 F.3d at 528 ("The duty to defend is determined by consulting the latest amended pleading."); *Evanston Ins. Co. v. McChristian*, 561 F. Supp. 2d 683 (E.D. Tex. 2007) (stating that under Texas law, "the duty to defend is determined by looking to the latest, and only the latest, amended pleadings."). However, "if there is an issue as to whether the duty to defend arose under [the] original or first amended complaint, the district court must examine both versions of the complaint to determine under which version the duty arose." *Energy Res.*, 2011

WL 3648083, at *5 (citing *Rhodes*, 719 F.2d at 119) ("A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty.").

Here, Allied cites to Gibson's original complaint to argue that it has no duty to defend, but Armadillo cites to Gibson's first and second amended complaints to argue that Allied does have a duty to defend. While the Court recognizes that it ordinarily is only to consider the most recent complaint, *Energy Res.*, 2011 WL 3648083, at *5, the parties here dispute if any complaint gave rise to coverage, and if so, which complaint. Accordingly, the Court will examine each of Gibson's complaints to determine if Allied has a duty to defend and at what point that duty arose. *See id.*; *Rhodes*, 719 F.2d at 119.

In the *Gibson* action, Gibson filed its original complaint against Armadillo on May 14, 2019 (Case No. 4:19-CV-358, Dkt. #1). Gibson's original complaint alleged infringement of the following Gibson trademarks: the Flying V Body Shape Design, the Explorer Body Shape Design, the ES Body Shape Design, the HUMMINGBIRD trademark, and the MODERNE trademark (Case No. 4:19-CV-358, Dkt. #1 ¶ 1). Gibson subsequently filed two amended complaints that each alleged additional trademark violations that were not alleged in the original complaint. On June 6, 2019, Gibson filed its first amended complaint. In addition to the five trademarks alleged in the original complaint, Gibson's first amended complaint alleged infringement of two more trademarks not previously alleged—the SG Body Shape Design and the Dove Wing Headstock Design (Case No. 4:19-CV-358, Dkt. #27 ¶ 1). On November 26, 2019, Gibson filed its second amended complaint. In addition to the seven trademarks alleged in the first amended complaint, Gibson's second amended complaint alleged infringement of one more trademark not previously alleged—the FLYING V trademark (Case No. 4:19-CV-358, Dkt. #74 ¶ 1).

Further, in both amended complaints, Gibson included a footnote stating that some of the new allegations raised in the amended complaints—namely Gibson's allegation that Armadillo infringed on Gibson's SG Body Shape Design and FLYING V trademarks—were not discovered until after the filing of the original complaint (Case No. 4:19-CV-358, Dkt. #27 at p. 28 n.1; Dkt. #74 at p. 24 n.1). Also in both amended complaints, Gibson alleged infringement of its trademarks in both the past and present tense. For example, Gibson stated it believed "Armadillo *is* or has been" infringing upon Gibson's trademarks and that these acts "have caused and, unless enjoined, *will continue* to cause" damage to Gibson (Case No. 4:19-CV-358, Dkt. #74 ¶¶ 33, 41) (emphasis added).

Based upon the above facts, Allied argues that the *Gibson* action does not allege any offense within the Policy Period because the original complaint was filed on May 14, 2019—five days before the Policy's inception. Allied thus concludes that the original complaint "can only refer to alleged infringements that took place before May 19, 2019" (Dkt. #45 at p. 4), since the original complaint was filed before the inception of the Policy (Dkt. #37 at p. 10). Allied contends that the footnotes in the amended complaints do not remedy this because, while they refer to new trademarks, they do not allege that the new claims of infringement occurred during the Policy Period (Dkt. #45 at p. 4). On the other hand, Armadillo argues that because the amended complaints allege infringement of new trademarks and use present tense language "without limitation as to time period," the Court should construe the Gibson complaints as alleging offenses within the Policy Period (Dkt. #48 at p. 2).

In support of its arguments, Allied cites to a district court case from Florida, *Aix Specialty Ins. Co. v. Night Indus.*, No: 6:20-CV-225, 2020 WL 8187752 (M.D. Fla. Dec. 9, 2020), (Dkt. #37 at p. 11). *Aix* is distinguishable from the present case. In *Aix*, the underlying complaint alleged

violations that occurred before the relevant policy period by date, but also included language that the violations occurred "over the course of 4 years, during the Policy's effective dates." *Aix*, 2020 WL 8187752, at *6–7. Thus, the court in *Aix* relied on the fact that the complaint alleged specific dates of violation, and not just violations over the course of four years both before and within the policy period generally. *Id.* This is unlike the present case where no specific dates of infringement are alleged, and instead infringement is alleged generally before and within the Policy Period (Dkt. #44, Exhibit D ¶¶ 5, 33, 41). Furthermore, the court in *Aix* analyzed this language under the "first publication" exclusion which is not at issue in the present motions.[3] The court found that based on the language of the complaint, "the [first] publications occurred prior to the effective dates of the [p]olicy period" even though the "4 years language" included allegations within the policy period. *Id* at *7. Thus, *Aix* is dissimilar from the present case since the court analyzed the complaint language to determine when a "first publication" occurred, and not to determine whether a complaint alleged a violation within the policy period at all. *Id.*

Allied next argues that because Gibson's original complaint does not allege that the infringements happened during the Policy Period, the Court must assume that Armadillo violated the trademarks *after* the inception of the Policy (Dkt. #37 at p. 11). Yet, as Allied admits, Gibson's complaints are "silent [on] when Armadillo violated" the various trademarks (Dkt. #37 at p. 5). Thus, based on Allied's logic, the opposite assumption—that Armadillo's infringement did happen within the Policy Period—could just as easily be made. Yet the Court need not resort to drawing assumptions here. As noted, Gibson's original complaint alleged that infringement occurred, and damage was caused, in both the past and present tense (Dkt. #44, Exhibit D ¶¶ 5, 33, 41). Based on this language, Gibson's original complaint plainly alleged a violation that is (or, at the time,

---

[3] To be clear, Allied does raise the first publication doctrine as an exclusion in its complaint (Dkt. #1 at p. 3). However, Allied did not move for summary judgment on that doctrine, and thus the Court will not consider it here.

was) currently causing damage to Gibson. *See Burlington*, 143 S.W.3d at 231 (stating that where underlying complaint did not plead when any specific event took place, court could not hold that duty to defend did not apply to at least some claims as a matter of law). Moreover, Gibson's first and second amended complaints also allege past and continuing infringement, and these complaints were filed *after* the inception of the Policy. Thus, even if the original complaint did not allege infringement during the Policy Period, the amended complaints did. Accordingly, Allied is not excused from its duty to defend on this basis. *Rhodes*, 719 F.2d at 119 ("A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty.").

Under Texas law, the Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally." *Zurich*, 268 S.W.3d at 490; *Gehan Homes*, 146 S.W.3d at 838; *Lipscomb Ins.*, 2010 WL 11475236, at *3, *8; *Gore Design*, 538 F.3d at 368; *Mt. Hawley Ins.*, 215 F. Supp. 2d at 787. And an insurer is required to defend any case in which at least *some* of the allegations in the pleadings potentially state a claim covered by the policy. *Liberty Mut.*, 473 F.3d at 600. Here, when Gibson's allegations are construed liberally in favor of Armadillo, at least some of the allegations in Gibson's second amended complaint allege claims that potentially occurred during the Policy Period. This is all the duty to defend requires. *Energy Res.*, 2011 WL 3648083, at *6; *GuideOne*, 197 S.W.2d at 141. Accordingly, the Court finds Allied does have a duty to defend Armadillo under the Policy.

## C.  Knowing Violation of Rights of Another Exclusion

Having determined that Allied has a duty to defend Armadillo in the *Gibson* action under the Policy, the Court will now address whether any exclusion in the Policy applies to relieve Allied of this duty. The Policy includes numerous exclusions to insurance coverage (Dkt. #36, Exhibit 1

at p. 23). At issue between the parties is the "Knowing Violation of Rights of Another" exclusion. This exclusion states Allied will not provide coverage for:

> 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'

(Dkt. #36, Exhibit 1 at p. 23). Allied claims this exclusion excuses any duty to defend in the *Gibson* action based upon the allegations in Gibson's original complaint and pre-suit correspondence between Gibson and Armadillo (Dkt. #37 at pp. 10–11). Namely, Allied points to the two cease-and-desist letters Gibson sent to Armadillo in October 2017 and May 2019, respectively, before the Policy went into effect, which Allied claims provided Armadillo with actual notice that Armadillo was violating Gibson's trademarks (Dkt. # 45 at p. 3). Allied concludes that because the cease-and-desist letters "establish that Armadillo had requisite knowledge of Gibson's contentions," coverage is excluded under the Knowing Violation of Rights exclusion (Dkt. #37 at p. 11). Armadillo responds that this evidence does not indicate Armadillo had knowledge of all of Gibson's claims prior to the Policy Period.

"Texas courts do not favor exclusions from coverage and will strictly construe them against the insurer." *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 270 (5th Cir. 2008) (citing *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)). "The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union*, 811 S.W.2d at 555. Further, "[i]n assessing the applicability of any exclusions, a court still acts within the bounds of the eight-corners rule and continues to construe the policy's terms 'according to general rules of contract construction to ascertain the parties' intent.'" *Great Am.*

*Ins. Co. v. Beyond Gravity Media, Inc.*, 560 F. Supp. 3d 1024, 1035 (S.D. Tex. 2021) (quoting *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015)). "Moreover, the court must determine whether the cited exclusions would relieve the insurer's duty to defend for *all* the underlying claims because, once coverage is triggered, the insurer must defend the entire suit." *Id.* (citing *Northfield*, 363 F.3d at 528) (emphasis in original).

Here, the Court is not persuaded that the Knowing Violation of Rights exclusion would relieve Allied's duty to defend *all* of the underlying claims brought against Armadillo. First, even if Armadillo had knowledge that it was infringing *some* of Gibson's trademarks, the record does not show that Armadillo had knowledge that it was infringing *all* of the trademarks Gibson alleged were violated. As discussed *supra*, Gibson alleged Armadillo infringed on a total of eight Gibson trademarks: the Flying V Body Shape Design, the Explorer Body Shape Design, the ES Body Shape Design, the HUMMINGBIRD trademark, the MODERNE trademark, the SG Body Shape Design, the Dove Wing Headstock Design, and the FLYING V trademark. Gibson's complaint stated that the October 20, 2017 cease-and-desist letter described the infringement of Gibson's Flying V Body Shape Design trademark and Explorer Body Shape Design trademark, and that the May 13, 2019 cease-and-desist letter described the infringement of Gibson's ES Body Shape Design trademark, HUMMINGBIRD trademark, and MODERNE trademark (Case No. 4:19-CV-358, Dkt. #74 ¶ 36). Gibson also alleged Armadillo had knowledge of the infringement of Gibson's Dove Wing Headstock Design "via an Opposition proceeding initiated by Gibson on May 5, 2006 and decided on June 10, 2009" (Case No. 4:19-CV-358, Dkt. #74 ¶ 36). However, neither the cease-and-desist letters nor any other facts contained within Gibson's complaint indicates that Armadillo had knowledge it was infringing on Gibson's SG Body Shape Design or the FLYING V trademarks. Gibson confirms as much through the footnote in its second amended complaint:

> Gibson did not provide Armadillo with actual notice of the infringement of
> Gibson's SG Body Shape Design Trademark or Gibson's Flying V Trademark as
> the infringement was determined after the original Complaint was filed on May 14,
> 2019

(Dkt. #74 ¶ 36 n.1).

Thus, the facts as alleged in the underlying complaint do not show that Armadillo had actual knowledge of *all* of the trademarks at issue as the infringement of at least some trademarks was not determined until after the original filing of the *Gibson* action. Therefore, Allied has not satisfied its burden of proving that the exclusion applies here to relieve Allied from its duty to defend Armadillo in the *Gibson* action based on the allegations made in Gibson's complaint. *See Beyond Gravity Media*, 560 F. Supp. 3d at 1035; *Northfield*, 363 F.3d at 528.

Allied next argues that the exclusion applies because Gibson's complaint alleges Armadillo's infringement was "willful and deliberate," and thus could only have been committed with actual knowledge. In analyzing similar exclusions, the Fifth Circuit has held that coverage is excluded if all that is alleged in a complaint is intentional conduct. *Mulberry Square Prods. v. State Farm Fire and Cas. Co.*, 101 F.3d 414, 422 (5th Cir.1996). The issue presented here, however, is whether Gibson's complaint relied exclusively on allegations of intentional conduct, or whether a fair reading of Gibson's complaint shows that Gibson was pleading the claims of intentional infringement in the alternative to allegations that Armadillo infringed Gibson's copyrights by some means less than an intentional state of mind. "Whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend, as long as the complaint alleges at least one cause of action within the coverage of the policy." *Rhodes*, 719 F.2d at 119; *see also Ryland Grp., Inc. v. Travelers Indem. Co. of IL*, No. CIV. A-00-CA-233, 2000 WL 33544086, at *10 (W.D. Tex. Oct. 25, 2000) (holding similar exclusion did not excuse insurer's duty to defend where underlying complaint pleaded non-intentional claims in the

alternative to intentional claims). Thus, the exclusion will only apply on this ground if Gibson's complaint exclusively alleged willful or intentional infringement.

Gibson's complaint did not solely allege intentional, willful, or deliberate infringement. For example, count one of Gibson's complaint alleged a violation of the Lanham Act, 15 U.S.C. § 1114(1), and requested damages based on Armadillo's "intentional and willful infringement." To establish a violation of the Lanham Act, "[i]t is not necessary to show an intent to deceive." *Better Bus. Bureau of Metro Hous., Inc. v. Med. Directors, Inc.*, 509 F. Supp. 811, 814 (S.D. Tex. 1981), *aff'd as modified*, 681 F.3d 397 (5th Cir. 1982). Thus, although Gibson's complaint alleged Armadillo's intentional or willful conduct in support of Gibson's request for certain enhanced remedies provided by statute for intentional or willful behavior, it is far from apparent that Gibson's claims do not also contemplate and encompass the lesser compensatory relief available for less egregious conduct. *Id.* Moreover, several other claims within Gibson's complaint did not rely on a specific *mens rea*. For example, in count nine, Gibson alleged Armadillo falsely designated its guitars were affiliated with Gibson's guitars (Case No. 4:19-CV-358, Dkt. #74 ¶¶ 103–06). Gibson did not allege this conduct was committed deliberately, willfully, or intentionally.

Because Gibson's complaint alleged both intentional and non-intentional infringement, the Court is not persuaded that the Knowing Violation of Rights exclusion applies to relieve Allied from its duty to defend Armadillo in the *Gibson* action. *See Rhodes*, 719 F.2d at 119 (stating "the insurer is obligated to defend, as long as the complaint alleges at least one cause of action within the coverage of the policy"); *Ryland*, 2000 WL 33544086, at *10; *Roman Cath. Diocese of Dall., ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133 S.W.3d 887, 896 (Tex. App.—Dallas 2004, pet. denied) (holding similar exclusion did not apply where evidence and claims brought against

insured did not require a showing of knowledge to prevail).

### D.  Known Loss Doctrine

Allied next claims that the "known loss doctrine" excludes coverage in this case because Armadillo had actual knowledge of the alleged losses before the Policy was issued based on the 2017 and 2019 cease-and-desist letters (Dkt. #37 at p. 12).

The known loss doctrine, also referred to as the "fortuity doctrine," "bars coverage for a loss the insured already knows to have occurred, or which is in progress at the inception of the carrier's initial policy." *Dallas Nat'l Ins. Co. v. Sabic Ams., Inc.*, 355 S.W.3d 111, 119 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). "A 'known loss' is one that the insured knew had occurred before the insured entered into the contract for insurance." *Burlington*, 143 S.W.3d at 230 (citing *Burch v. Commonwealth Cnty. Mut. Ins. Co.*, 450 S.W.2d 838, 840–41 (Tex. 1970)). "A 'loss in progress' involves those situations in which the insured knows, or should know, of a loss that is ongoing at the time the policy is issued." *Id.* Like other exclusions, application of the known loss doctrine in the duty-to-defend context is resolved by the eight-corners rule. *Wesco Ins. Co. v. Layton*, 725 F. App'x 289, 293 (5th Cir. 2018).

The relevant inquiry under the known loss doctrine is "whether [the insured] knew at the time they entered the insurance policy that they were engaging in activities for which they could possibly be found liable." *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F. App'x 194, 199 (5th Cir. 2004). Thus, the known loss doctrine does not apply a subjective test that would "require an insured to have specific, *actual knowledge* of the loss." *Moser v. Fid. Nat'l Title Ins. Co.*, No. 4:17-CV-104, 2018 WL 1413346, at * 8 (E.D. Tex. Mar. 21, 2018) (emphasis added). Instead, the doctrine applies an objective test from the viewpoint of the insured, and will preclude coverage when, objectively viewed, the insured is or should be aware of an ongoing or known loss at the time the policy is

purchased. *King*, 85 S.W.3d at 187. Accordingly, to prevail on this ground, Allied has the burden to establish as a matter of law that, objectively viewed from Armadillo's standpoint, the trier of fact must conclude Armadillo knew or should have known of Gibson's losses when it purchased the Policy.

Based on the evidence the Court may properly consider under the eight-corners rule, the Court is not persuaded that Allied has satisfied its burden of proving the applicability of the known loss doctrine. As discussed, the cease-and-desist letters and Gibson's complaint do not establish as a matter of law that Armadillo knew or should have known about *all* of the alleged infringed trademarks. Thus, even if Armadillo was or should have been aware that it was causing Gibson losses by infringing on some of Gibson's trademarks, Allied has not shown that Armadillo knew or should have been aware that it was infringing on the other trademarks Gibson did not provide Armadillo with actual notice of. *See generally Rhodes*, 719 F.2d at 119.

Allied next argues that Armadillo should have been aware of the potential risks of all of Gibson's claims, regardless of whether Armadillo received actual notice of every claim (Dkt. #45 at p. 12). Allied contends that the FLYING V and SG Body Shape trademarks that Armadillo did not have actual notice of "involved virtually the same guitar body shape" as the trademarks Armadillo did have actual notice of through the cease-and-desist letters (Dkt. #45 at p. 11). Regardless of Allied's argument, the Court's analysis of this issue is bound by the eight-corners rule. *Wesco*, 725 F. App'x at 293. And here, Gibson's complaint separately alleged infringement of each of its trademarks, presenting the infringement of each trademark as an independent cause of loss (Case No. 4:19-CV-358, Dkt. #74). Thus, Allied has not shown that the record reviewable within the eight-corners rule definitively establishes that Armadillo knew or should have known about each of Gibson's alleged losses. *Centennial Ins. Co. v. Bailey*, No. 05-98-007-CV, 2000 WL

1515158, at *10 (Tex. App.—Dallas Oct. 12, 2000, no pet.) (holding known loss doctrine did not apply because the insurer's evidence only showed that the insured *could* have had knowledge of the losses before or after the policy period, and thus failed to establish the conclusion applied as a matter of law) (emphasis added); *Fed. Ins. Co. v. Northfield Ins. Co*., No. 4:14-CV-0262, 2017 WL 11633133, at *15 n.38 (S.D. Tex. Nov. 15, 2017) (holding doctrine did not apply because insurer's evidence failed to *definitively establish* that the insured knew or should have known of *all* of the potential claims at issue) (emphasis added); *Cf. Essex Ins. Co. v. Redtail Prod., Inc*., No. 3:97-CV-2120, 1998 WL 812394, at *3 (N.D. Tex. Nov. 12, 1998), *aff'd*, No. 99-11906, 2000 WL 554425 (5th Cir. Apr. 12, 2000) (per curiam) (known loss doctrine precluded coverage where pre-suit demand letters alleged infringement of the specific trademarks raised in complaint). At most, Allied has shown that it is arguably possible that Armadillo should have known about all of the trademarks Gibson alleged Armadillo infringed. But where the Court must resolve any doubts about the applicability of an exclusion in favor of the insured, an insurer demonstrating that it is possible an exclusion applies is not enough to satisfy its burden. *See Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141.

Finally, Allied cites several Florida cases applying the known loss doctrine that it claims are similar to the present situation. *See Interstate Fire & Cas. Co. v. Abernathy*, 93 So. 3d 352 (Fla. Dist. Ct. App. 2012); *Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602 (Fla. Dist. Ct. App. 2010); *Normandy Ins. Co. v. Sorto*, 276 So. 3d 337 (Fla. Dist. Ct. App. 2018). However, in all of these cases, the evidence unambiguously showed that the insured knew the loss had occurred, and knew that it would be legally responsible for the loss. *Abernathy*, 93 So. 3d at 359 ("At the time the Club requested the COI, it knew Dakota had suffered an injury at the festival it sponsored and that the Club would be legally responsible for any negligence on the part of the Club."); *Nourachi*,

44 So. 2d at 610 ("Nourachi knew that he had suffered a loss compensable under the title policy before he purchased the First American policy.") (Lawson, J. concurring); *Sorto*, 276 So. 3d at 340–41 ("J.A.M.'s insurance broker only stirred into action . . . [only] after being notified of Mr. Sorto's serious injury. Then, in seeking the coverage, J.A.M.'s agent didn't disclose his serious injury to the insurer."). Further, none of these cases involve an amended complaint where the plaintiff in the underlying action expressly admits that the defendant did not have actual notice of infringement of some trademarks. Thus, none of these cases are persuasive.

In sum, Allied has not met its burden of showing that the facts alleged in Gibson's complaint definitively establish that Armadillo had or should have had knowledge of a known loss when it purchased the Policy since the infringement of some trademarks was not discovered by Gibson until after the Policy was purchased. Accordingly, the Court finds that Allied has failed to establish as a matter of law that the known loss doctrine applies to preclude coverage in this case.

### E. Conclusion

In sum, taking into account the considerable deference given to an insured under Texas law, *Gilbert*, 327 S.W.3d at 124, the Court finds that Allied has a duty under the Policy to defend Armadillo in the underlying *Gibson* action. Further, Allied did not meet its burden of showing that any exclusion applies to relieve it of its duty to defend. *Id.* Accordingly, Armadillo is entitled to summary judgment on this issue.

## IV. Duty to Indemnify

In its motion for summary judgment, Allied appears to argue it is entitled to judgment as a matter of law on its declaratory judgment claim related to the duty to indemnify. The only argument Allied offers on this issue is that "[s]ince no duty to defend exists, there is also no duty to indemnify Armadillo and Allied is entitled to summary judgment" (Dkt. #37 at p. 15; Dkt. #51

at p. 8). However, the Court has found Allied has a duty to defend Armadillo in the *Gibson* action. Further, under Texas law, the duty to defend and indemnify "are distinct and separate duties." *King*, 85 S.W.3d at 187. To be sure, "an insurer may have a duty to defend, but, eventually, no duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Conversely, "an insurer may have a duty to indemnify its insured even if the duty to defend never arises." *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co*., 300 S.W.3d 740, 743 (Tex. 2009); *see also Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (stating that "even if a liability insurer breaches its duty to defend, the party seeking indemnity still bears the burden to prove coverage if the insurer contests it."). Accordingly, even if the Court were to conclude that no duty to defend arose in this case, Allied would not automatically be entitled to summary judgment on the issue of indemnity. *D.R. Horton*, 300 S.W.3d at 743. Thus, to the extent Allied is moving for summary judgment on its declaratory judgment claim related to the duty to indemnify, Allied has not met its burden of showing it is entitled to judgment on this issue.

## V.     **Counterclaims**

Allied next argues that it is entitled to summary judgment on all of Armadillo's counterclaims. In Armadillo's answer, along with denying Allied's declaratory judgment claims, Armadillo alleges counterclaims for declaratory judgment based on Allied's duty to defend and duty to indemnify, breach of contract based on Allied's failure to provide coverage and failure to cooperate, violation of the duty of good faith and fair dealing, negligence, and misappropriation of trade secrets (Dkt. #13). Armadillo moves for summary judgment on Count One of its breach of contract claim and Count One of its declaratory judgment claim, which are both based on Allied's failure to provide coverage based on its duty to defend under the Policy. Aside from those two claims, the remainder of Armadillo's counterclaims are all based on Allied's alleged inclusion

of purportedly confidential, sensitive financial information as an exhibit to Allied's original complaint in this action (Dkt. #13 at pp. 6–13). Armadillo did not move for summary judgment on these counterclaims.

### A. Declaratory Judgment – Duty to Defend

The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Thus, it gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

In Count One of its declaratory judgment claim, Armadillo "seeks a judicial declaration that Allied has a duty to defend Armadillo in the Gibson Litigation, under the Policy" (Dkt. #12 ¶ 32). The Court has found that Allied has a duty to defend Armadillo in the *Gibson* action under the Policy. Thus, Armadillo is entitled to summary judgment on this claim.

### B. Breach of Contract – Failure to Provide Coverage

In Texas, "the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).

In Count One of its breach of contract claim, Armadillo alleges that Allied "has a duty to provide coverage to Armadillo for the Gibson litigation," and that Allied breached this duty by "purporting to deny coverage for the Gibson litigation and failing to pay covered amounts that Armadillo has incurred" (Dkt. #13 ¶¶ 20, 21). Thus, this theory of breach is based on Allied's denial of its duty to defend Armadillo in the *Gibson* action. The Court has found that Allied has a duty to defend Armadillo in the *Gibson* action under the Policy. By refusing to defend Armadillo in the *Gibson* action, Allied is in breach of its duties under the Policy. Armadillo has alleged that as a result of Allied's breach, "Armadillo has suffered and continues to suffer harm, including but not limited to, the amounts of Defense Costs it has spent in connection with the Gibson Litigation" (Dkt. #13 ¶ 22). Thus, Armadillo has proven all of the elements of a breach of claim as a matter of law, and is entitled to summary judgment on this issue.

### C.  Other Counterclaims

As noted, Armadillo alleges counterclaims for breach of contract based on the failure to cooperate, bad faith, negligence, and misappropriation of trade secrets (Dkt. #13). These counterclaims are all based on the same premise—that Allied is liable to Armadillo for attaching an unredacted version of the Policy that allegedly contains confidential sales information to its complaint in this case. Armadillo contends that the damages related to these claims is asserted independent of the Policy and of any coverage decision or claims handling by Allied.

After a careful review of the record and the arguments presented, the Court is not convinced that Allied has met its burden of demonstrating that there is no material issue of fact remaining on these claims. Accordingly, the Court finds Allied is not entitled to summary judgment on these issues.

### CONCLUSION

It is, therefore, **ORDERED** that Plaintiff Allied Property and Casualty Insurance Company's Motion for Summary Judgment (Dkt. #37) is **DENIED**.

It is further **ORDERED** that Defendant Armadillo Distribution Enterprises, Inc.'s Motion for Partial Summary Judgment (Dkt. #36) is **GRANTED.** The Court declares that Allied has a duty to defend Armadillo in the underlying *Gibson* action. Consequently, no material questions of fact exist with regard to whether Allied is liable to Armadillo for breach of its duty to defend under the Policy as raised in Count One of Armadillo's breach of contract claim. Therefore, Armadillo is entitled to judgment as a matter of law on Count One of its breach of contract claim. The only remaining issue to be decided by the trier of fact on this claim is the amount of damages.

**IT IS SO ORDERED.**

**SIGNED this 18th day of August, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE